1

2

3

4

5

6

7

8    **UNITED STATES DISTRICT COURT**

9    **SOUTHERN DISTRICT OF CALIFORNIA**

10

11   GARRY McCULLOUGH,                          CASE NO. 09cv1808-WQH-NLS

12                            Plaintiff,        ORDER
              vs.
13   LENNAR CORPORATION, a
     corporation, and DOES 1 through 100,
14   inclusive,

15                            Defendant.

16   HAYES, Judge:

17        The matter before the Court is the Motion to Dismiss the Complaint Or, in the

18   Alternative, Motion to Strike First Amended Complaint ("Motion to Dismiss"), filed by

19   Defendant, Lennar Corporation ("Lennar").  (Doc. # 11).

20   **I.    Background**

21        On June 30, 2009, Plaintiff initiated this action by filing a Complaint in the San Diego

22   County Superior Court, seeking to recover damages against his former employer, Lennar.

23   (Doc. # 1, Ex. B).

24        On August 20, 2009, Lennar removed the action to this Court.  (Doc. # 1).  Lennar

25   alleges that this Court has diversity jurisdiction because there is complete diversity between

26   the parties (Plaintiff is a California citizen and Lennar is a Delaware corporation with a

27   principal place of business in Florida) and the amount in controversy exceeds $75,000.  *See*

28   28 U.S.C. § 1332(a).

On September 14, 2009, Plaintiff filed a First Amended Complaint.  (Doc. # 8).

**A.**     **Allegations of the First Amended Complaint**

In May of 2004, Plaintiff was hired by Lennar, a corporation engaged in the business of home construction.  Plaintiff's job title was "Area Manager," and he was hired to work on Lennar's residential housing development projects.  (Doc. # 8 ¶ 4).  Plaintiff's job was "to see to it that the projects were constructed as required by the contracts up to the completion of the housing pads."  *Id*.  "Lennar agreed to pay [Plaintiff] compensation comprised of a base annual salary of $95,000.00 plus a 25% performance incentive (this performance incentive was referred to within the company as a 'bonus' although it was not discretionary).  If [Plaintiff] achieved his performance goals then the 25% performance incentive was earned and payable."  *Id*.  Plaintiff agreed to leave his then-current employment (where he "earned over $95,000.00 per year") and accept the Lennar employment because, with the 25% performance incentive, he would earn more money.  *Id*.  "Without the performance incentive, [Plaintiff] would have earned less than at his prior job and would not have accepted employment with Lennar."  *Id*. "[Plaintiff] was paid as Lennar had agreed he would be paid, his base $95K per year plus the 25% performance compensation until Lennar fired [Plaintiff]."  (Doc. # 8 ¶ 7).  "[Plaintiff] was very good at his job and received numerous accolades from his superiors including acknowledgments that he had saved the company millions of dollars.  [Plaintiff] at all times performed his job satisfactorily."  *Id*.

"On or about May 16, 2008, Lennar department Vice President, Mike Farley..., removed [Plaintiff] from his job.  [Plaintiff]'s job was given to his assistant, Jaime Hernandez.  Mr. Hernandez was far less qualified to the job if he was qualified at all."  (Doc. # 8 ¶ 8).  At the time he was terminated, Plaintiff was 53 years old and "suffered from congestive heart failure and diabetes."  (Doc. # 8 ¶ 10).  "Hernandez was approximately 20 years younger [than Plaintiff] and had no disabilities."  (Doc. # 8 ¶ 8).  "[Plaintiff] protested his termination and inquired how could Lennar keep Hernandez and let [Plaintiff] go.  Mr. Farley responded: "We have to.  He is half the price and half your age."  (Doc. # 8 ¶ 9).

"Farley told [Plaintiff] that they were laying off a lot of people in the department, but

1  only [Plaintiff] was actually terminated.... The actual and verifiable reason for [Plaintiff]'s

2  termination were his age and medical condition.... The stated reasons for his termination are

3  nothing but pretextual." (Doc. # 8 ¶ 10). "Lennar failed and refused to pay [Plaintiff] his

4  earned performance incentive compensation at the time he was terminated or at any time since.

5  All other Lennar employees in [Plaintiff]'s department were paid their performance incentives.

6  At the time he was fired, the other employees showed [Plaintiff] their bonus checks." (Doc.

7  # 8 ¶ 11).

8      The First Amended Complaint alleges five causes of action: (1) "discrimination in

9  violation of [California] Government Code § 12940 (age and disability)" (Doc. # 8 at 4); (2)

10  wrongful termination in violation of public policy; (3) failure to pay overtime compensation;

11  (4) unfair competition; and (5) unjust enrichment.

12      **B.    Motion to Dismiss**

13      On September 28, 2009, Lennar filed the Motion to Dismiss the First Amended

14  Complaint. (Doc. # 11). Lennar moves for the dismissal of all claims, except Plaintiff's age

15  discrimination claim in the First Cause of Action. On October 19, 2009, Plaintiff filed an

16  opposition to the Motion to Dismiss. (Doc. # 12). On October 26, 2009, Lennar filed a reply.

17  (Doc. # 14).

18  **II.    Discussion**

19      **A.    Standard of Review**

20      Federal Rule of Civil Procedure 12(b)(6) permits dismissal for "failure to state a claim

21  upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Dismissal under Rule 12(b)(6)

22  is appropriate where the complaint lacks a cognizable legal theory or sufficient facts to support

23  a cognizable legal theory. *See Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir.

24  1990). To sufficiently state a claim to relief and survive a Rule 12(b)(6) motion, a complaint

25  "does not need detailed factual allegations" but the "[f]actual allegations must be enough to

26  raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544,

27  555 (2007). When considering a motion to dismiss, a court must accept as true all

28  "well-pleaded factual allegations." *Ashcroft v. Iqbal*, --- U.S. ---, 129 S. Ct. 1937, 1950

(2009).  "In sum, for a complaint to survive a motion to dismiss, the non-conclusory factual content, and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief."  *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009) (quotations omitted).

## B.      Request for Judicial Notice

Lennar requests that the Court take judicial notice of the following documents: a June 15, 2005 letter from Lennar offering employment to Plaintiff;[1] a document entitled "Lennar Corporation 2005 Target Business Opportunity"; a document entitled "Lennar Corporation 2007 Target Business Opportunity"; Lennar's 2008 Form 10-K, filed with the Securities and Exchange Commission; and an order granting a motion to dismiss in *Harrington v. Lennar Corp.*, CV 09-446 (C.D. Cal., Sept. 16, 2009).  (Doc. # 11-2).

"A district court ruling on a motion to dismiss may consider documents 'whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the [plaintiff's] pleading.'"  *Parrino v. FHP, Inc.*, 146 F.3d 699, 705-06 (9th Cir. 1998) (quoting *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994)).  Also, "a district court ruling on a motion to dismiss may consider a document the authenticity of which is not contested, and upon which the plaintiff's complaint necessarily relies."  *Id*. at 706.

Plaintiff contests Lennar's contention that Plaintiff's employment was subject to the terms stated in the June 15, 2005 offer letter, the "2005 Target Business Opportunity," and the "2007 Target Business Opportunity."  Plaintiff alleges:

> Lennar agreed to pay [Plaintiff] compensation comprised of a base annual salary of $95,000.00 plus a 25% performance incentive (this performance incentive was referred to within the company as a 'bonus' although it was not discretionary).  If [Plaintiff] achieved his performance goals then the 25% performance incentive was earned and payable....  Plaintiff was interviewed and hired by Lennar's Senior Area Manager, Mark Porter....  Lennar gave [Plaintiff] a so-called offer letter and asked him to sign it.  Porter told [Plaintiff] that the offer letter was not his employment contract and that an employment contract would be prepared with the agreed terms of employment, specifically the compensation terms included.  [Plaintiff] was told that the offer letter was necessary for the Human Resources Dept. to start an employee file for him.  An

---

[1]  The letter states: "Following the plan's guidelines, you will be eligible to participate in the bonus program for fiscal year 2005, payable April 15, 2006."  (Welke Decl., Ex. A, Doc. # 11-5).

employment contract was prepared, however, [Plaintiff] does not have a copy of that contract.  [Plaintiff]'s 25% performance incentive was in lieu of and greater than Lennar's standard 'Target Business Opportunity' schedules.

(Doc. # 8 ¶ 4-5).  Plaintiff alleges: "[Plaintiff] was paid as Lennar had agreed he would be paid, his base $95K per year plus the 25% performance compensation until Lennar fired [Plaintiff].  [Plaintiff] was not paid under the standard 'Target Business Opportunity' schedules."  (Doc. # 8 ¶ 7).

When considering a Motion to Dismiss, the Court is obligated to accept as true all non-conclusory factual allegations.  *See Iqbal*, 129 S. Ct. at 1950.  Plaintiff has adequately alleged that his employment with Lennar was not subject to the terms of the June 15, 2005 offer letter, the "2005 Target Business Opportunity," and the "2007 Target Business Opportunity."  Viewing Plaintiff's allegations as true, these documents are irrelevant.  The Request for Judicial Notice of these documents is denied.

The relevance of the Lennar Form 10-K and the order granting a motion to dismiss in *Harrington v. Lennar Corp.* is dependant upon the relevance of the "2005 Target Business Opportunity" and the "2007 Target Business Opportunity."  Accordingly, the Request for Judicial Notice is denied in its entirety.

### C.   Disability Discrimination

"California uses the three-stage burden-shifting test established by the United States Supreme Court for trying claims of discrimination based on a theory of disparate treatment." *Scotch v. Art Inst. of Cal.-Orange County, Inc.*, 173 Cal. App. 4th 986, 1004 (2009) (citing *Guz v. Bechtel Nat'l, Inc.*, 24 Cal. 4th 317, 354 (2000); *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)).  Under the "*McDonnell Douglas* test," the plaintiff has the initial burden of establishing a prima facie case of discrimination.  *Guz*, 24 Cal. 4th at 354.  A prima facie case generally means the plaintiff must show that "(1) he was a member of a protected class, (2) he was qualified for the position he ... was performing competently in the position he held, (3) he suffered an adverse employment action, such as termination..., and (4) some other circumstance suggests discriminatory motive." *Id*. at 355.  "For example, in the seminal case of *McDonnell Douglas*, the court found that one rejected for a job opening could establish a

prima facie case of race discrimination by showing that (1) he or she was a member of a racial minority, (2) he or she applied and was qualified for an available job, (3) he or she was rejected, and (4) the position thereafter remained open and the employer continued to seek applications from persons with similar qualifications." *Id.* at 355 n.21 (citing *McDonnell Douglas*, 411 U.S. at 802). Similarly, to establish a prima facie case of age discrimination, a plaintiff must show he was: "(1) a member of a protected class...; (2) performing his job in a satisfactory manner; (3) discharged; and (4) replaced by a substantially younger employee with equal or inferior qualifications." *Wallis v. J.R. Simplot Co.* 26 F.3d 885, 891 (9th Cir. 1994) (citation omitted); *see also DeLuca v. Winer Indus.*, 53 F.3d 793, 797 (7th Cir. 1995) (same, in disability discrimination case).

The First Amended Complaint alleges: (a) Plaintiff was disabled ("Because of [his congestive heart failure], [Plaintiff] had to carefully pace himself so as to avoid shortness of breath and to avoid debilitating fatigue. [Plaintiff] also had diabetes that required him to frequently check his blood sugar and inject himself with insulin. [Plaintiff]'s diabetes also required that he have ready access to food and the ability to carefully schedule his eating during the day."); (b) Plaintiff informed his supervisor of his disabilities; (c) Plaintiff was performing his job in a satisfactory manner ("[Plaintiff] was very good at his job and received numerous accolades from his superiors including acknowledgments that he had saved the company millions of dollars."); (d) Plaintiff was discharged; and (e) Plaintiff was replaced by a "far less qualified person" with "no disabilities." (Doc. # 8 ¶¶ 7-8, 14-15). These allegations are sufficient to state a prima facie case of disability discrimination. The Motion to Dismiss the First Cause of Action is denied.

### D.   Wrongful Termination in Violation of Public Policy

A cause of action for wrongful termination in violation of public policy is a recognized exception to the employment at will doctrine. *See Green v. Ralee Eng'g Co.*, 19 Cal. 4th 66, 75 (1998). Wrongful termination from employment is tortious when the termination occurs in violation of a fundamental public policy. *See Gantt v. Sentry Ins.*, 1 Cal. 4th 1083, 1090 (1992). The California Court of Appeals has held that "if [the employer] discharged [the

employee] in order to avoid paying him the commissions, vacation pay, and other amounts he had earned, it violated a fundamental public policy of this state." *Gould v. Maryland Sound Indus., Inc.*, 31 Cal. App. 4th 1137, 1148 (1995) (citing Cal. Labor Code § 216).

Plaintiff's Second Cause of Action alleges: "Lennar terminated [Plaintiff]'s employment, in part, in order to avoid paying him compensation rightfully due him that he had earned. The earned compensation owed to Plaintiff was in excess of $20,000.00." (Doc. # 8 ¶ 19). Plaintiff alleges that he "fulfilled the requirements and had earned and was entitled to his 25% performance incentive. Lennar failed and refused to pay [Plaintiff] his earned performance incentive compensation at the time he was terminated or at any time since." (Doc. # 8 ¶ 11). Plaintiff alleges that his supervisor said Lennar was replacing Plaintiff with a less-qualified individual because, in part, the less-qualified individual was "half the price" of Plaintiff. (Doc. # 8 ¶ 9).

The First Amended Complaint adequately alleges that Lennar agreed to pay Plaintiff a "25% performance incentive," which had been earned as of the date of his termination. Viewing all inferences in Plaintiff's favor, the statement by Plaintiff's supervisor indicating that Plaintiff was being terminated for financial reasons could be construed to mean that Lennar terminated Plaintiff in part to avoid paying Plaintiff the earned "performance incentive [which] was in lieu of and greater than Lennar's standard 'Target Business Opportunity' schedules." (Doc. # 8 ¶ 5). The Motion to Dismiss the Second Cause of Action is denied.

### E.   Failure to Pay Overtime Compensation

Plaintiff's Third Cause of Action alleges that "Plaintiff is entitled to overtime compensation for all hours he worked in excess of 40 hours per week under the California Labor Code § 1194 and the Federal Fair Labor Standards Act." (Doc. # 8 ¶ 25). In support of this Cause of Action, Plaintiff alleges:

> More than 50% of plaintiff's time was at the work sites and hands-on production work. Plaintiff was required to fill out a time card each week of his employment. Plaintiff worked between 60-70 hours per week for all non-vacation weeks he was employed by Lennar. Although Lennar paid plaintiff on a salary basis, Lennar told plaintiff that he had to fill out a time card every week. Lennar told plaintiff that he had to record only 40 hours per week on the time card, i.e. plaintiff was required to submit a false time card each week.... At the termination of Plaintiff's employment contract, ... Lennar failed

1
2
3

to pay Plaintiff a part of the compensation he was owed, specifically the difference between the amount actually paid and the amount owed.... Plaintiff was told that he was a salaried employee exempt from the overtime laws when he was hired. Lennar has never stated what exemption they claimed applied. Plaintiff is unaware of any exemptions that would apply to him.

4

(Doc. # 8 ¶¶ 23-25).[2]

5

California employers are required to pay employees overtime, unless they are exempt.

6  *See* Cal. Labor Code §510(a). The California Labor Code provides: "Notwithstanding any

7  agreement to work for a lesser wage, any employee receiving less than ... the legal overtime

8  compensation applicable to the employee is entitled to recover in a civil action the unpaid

9  balance of the full amount of this ... overtime compensation." Cal. Labor Code § 1194(a). "If

10 an employee is entitled to overtime pay under California law, the employer may not abrogate

11 its obligation to pay such compensation by written agreement. Further, absent an explicit wage

12 agreement, a fixed salary does not serve to compensate an employee for statutory overtime

13 worked." *Nordquist v. McGraw-Hill Broad. Co.*, 32 Cal. App. 4th 555, 562 (1995) (citations

14 omitted). The employer "bear[s] the burden of proving the affirmative defense of plaintiff's

15 exemption from overtime." *Gomez v. Lincare, Inc.*, 173 Cal. App. 4th 508, 515 (2009) (citing

16 *Sav-On Drug Stores, Inc. v. Superior Court*, 34 Cal. 4th 319, 338 (2004)). Plaintiff is not

17 obligated to plead facts showing that he is not exempt. The First Amended Complaint

18 adequately alleges a claim for failure to pay overtime compensation. The Motion to Dismiss

19 the Third Cause of Action is denied.

20      **F.      Unfair Competition**

21      Plaintiff's Fourth Cause of Action, for unfair competition, alleges: "Lennar's failure to

22 pay overtime wages owed to its employees, including Plaintiff, constitutes an unfair business

23 practice under Bus. & Prof. Code § 17200 et seq." (Doc. # 8 ¶ 28). An employee may state

24 a claim by alleging the employer "violated Business and Professions Code section 17200 et

25

26      [2] The Third Cause of Action is entitled: "breach of employment contract–failure to pay
27 wages." (Doc. # 8 at 6). The allegations of the Third Cause of Action relate to a claim for overtime compensation, rather than a claim for breach of contract. "[M]islabeling a cause of action is not fatal to the complaint, so long as the necessary facts of that claim are properly
28 pled." *Mauro v. Gen. Motors Corp.*, No. Civ. 07-892, 2008 WL 2775004, at *6 (E.D. Cal., July 15, 2008) (citations omitted).

seq. by failing to pay them for the hours they actually worked, and by failing to pay them overtime compensation." *Gomez*, 173 Cal. App. 4th at 524; *see also Cortez v. Purolator Air Filtration Prods. Co.*, 23 Cal. 4th 163, 177 (2000). Because the First Amended Complaint adequately alleges a claim for failure to pay overtime compensation, the Motion to Dismiss the Fourth Cause of Action is denied.

### G.    Unjust Enrichment

Plaintiff's Fifth Cause of Action, for unjust enrichment, alleges Lennar was unjustly enriched by failing to pay Plaintiff for "performance incentive compensation" and "overtime compensation." (Doc. # 8 ¶ 32). "The elements of an unjust enrichment claim are the 'receipt of a benefit and the unjust retention of the benefit at the expense of another.'"[3] *Peterson v. Cellco P'ship*, 164 Cal. App. 4th 1583, 1593 (2008) (quoting *Lectrodryer v. SeoulBank*, 77 Cal. App. 4th 723, 726 (2000)). The First Amended Complaint adequately alleges that Plaintiff has not been paid for "performance incentive compensation" and overtime compensation which Plaintiff has earned. (Doc. # 8 ¶¶ 11, 32). This is sufficient to allege that Lennar received "a benefit and ... unjust[ly] ret[ained] ... the benefit at the expense of [Plaintiff]." *Peterson*, 164 Cal. App. 4th at 1593. The Motion to Dismiss the Fifth Cause of Action is denied.

## III.    Conclusion

IT IS HEREBY ORDERED that the Motion to Dismiss is **DENIED**. (Doc. # 11).

DATED: November 10, 2009

*William Q. Hayes*

**WILLIAM Q. HAYES**
United States District Judge

---

[3] "The state and the federal courts appear to be unclear whether in California a court may recognize a claim for 'unjust enrichment' as a separate cause of action." *Nordberg v. Trilegiant Corp.*, 445 F. Supp. 2d 1082, 1100 (N.D. Cal. 2006) (collecting cases). As this issue has not been raised by the parties, the Court will assume for the purposes of deciding this motion that there exists a separate cause of action for "unjust enrichment" under California law.