Cindi L. Pusateri (State Bar No. 216899)
Email: cpusateri@meyerwhite.com
Hien Nguyen (State Bar No. 229794)
Email: hnguyen@meyerwhite.com
MEYER WHITE LLP
600 Wilshire Boulevard, Suite 960
Los Angeles, California 90017
Telephone: (213) 330-1760
Facsimile: (213) 330-1759

Julia Lynn Nye (State Bar No. 160092)
Email: jnye@meyerwhite.com
MEYER WHITE LLP
600 Travis Street
Suite 900
Houston, Texas 77002
Telephone: (713) 951-1400
Facsimile: (713) 951-1499

Attorneys for Defendant
LENNAR CORPORATION

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GARRY McCULLOUGH,<br><br>    Plaintiff,<br><br>    v.<br><br>LENNAR CORPORATION, a corporation, and DOES 1 through 10, inclusive,<br><br>    Defendants. | **CASE NO. 09-CV-1808 WQH (BGS)**<br>**Hon. William Q. Hayes**<br><br>**DEFENDANT LENNAR CORPORATION'S REPLY TO PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT**<br><br>[Filed concurrently with Defendant's Reply Declaration of Cindi Pusateri in Support of Lennar's Motion for Summary Judgment]<br><br>Date:        January 31, 2011<br>Time:       11:00 a.m.<br>Courtroom: 4<br><br>**NO ORAL ARGUMENT UNLESS REQUESTED BY THE COURT** |

**LENNAR'S REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

# TABLE OF CONTENTS

I.   INTRODUCTION ................................................................................................................ 1

II.  PLAINTIFF'S AGE AND DISABILITY DISCRIMINATION CLAIMS FAIL. .................. 1

    A.   Plaintiff Cannot Establish a *Prima Facie* Case for Disability Discrimination. ................... 1

    B.   Plaintiff Cannot Establish a *Prima Facie* Case for Age Discrimination. ........................... 2

    C.   Plaintiff Has No Evidence of Pretext or Discriminatory Animus. ....................................... 3

III. PLAINTIFF'S BREACH OF CONTRACT CLAIM FAILS ................................................... 4

    A.   Plaintiff Cannot Prove a Contractual Entitlement to a Performance Bonus ....................... 4

       1.   The Written 2007 TBO Plan Superseded Plaintiff's Prior Alleged Bonus Oral Agreement. ......................................................................................................... 4

       2.   Plaintiff Cannot Prove That He Reasonably Believed that Porter Had the Authority to Make a Binding Oral Contract Concerning Any Alleged Specific Bonus Amount. ........ 5

    B.   Plaintiff's Claim for Unpaid Overtime Fails.......................................................................... 6

**Federal Cases**

*Bothell v. Phase Metrics, Inc.*,
   299 F.3d 1120 (9th Cir. 2002) .................................................................................. 7, 8

*Cowart v. Ingalls Shipbuilding, Inc.*,
   213 F.3d 261 (5th Cir. 2000) ......................................................................................... 9

*Douglas v. Argo-Tech Corp.*,
   113 F.3d 67 (6th Cir. 1997) .......................................................................................... 7

*Grizzle v. Travelers Health Network, Inc.*,
   14 F.3d 261 (5th Cir.1994) ............................................................................................ 1

*Kuchinskas v. Broward County*,
   840 F.Supp. 1548 (S.D. Fla. 1993) ................................................................................ 7

*Metoyer v. Chasman*,
   504 F.3d 919 (9th Cir. 2007) ......................................................................................... 4

*Perine v. ABF Freight Sys., Inc.*,
   457 F.Supp.2d 1004 (C.D. Cal. 2006) ........................................................................... 8

**California Cases**

*Combs v. Skyriver Communications, Inc.*,
   159 Cal. App. 4th 1242 (2008) ............................................................................. 7, 8, 9

*Hersant v. Dep't of Soc. Servs.*,
   57 Cal. App. 4th 997 (1997) .......................................................................................... 3

*In re Trombley*,
   31 Cal. 2d 801 (1948) .................................................................................................... 5

*Reid v. Google, Inc.*,
   50 Cal. 4th 512 (2010) ................................................................................................... 3

*Sandell v. Taylor-Listug*,
   188 Cal.App.4th 297 (2010) .......................................................................................... 2

*South Sacramento Drayage Co. v. Campbell Soup Co.*,
   220 Cal. App. 2d 851 (1963) ......................................................................................... 6

*United Parcel Service Wage & Hour Cases*,
   190 Cal. App. 4th 1001 (2010) ................................................................................. 9, 10

**California Statutes**

Civil Code §1625 .................................................................................................................. 4

Labor Code § 206 ................................................................................................................. 4

Labor Code §216 .................................................................................................................. 5

**Federal Regulations**

29 C.F.R. §541.200 .................................................................................................... 7

29 C.F.R. §541.205 .................................................................................................... 8

29 C.F.R. §541.207 .................................................................................................. 10

**Other Authorities**

IWC Wage Order 16-2001 ..................................................................................... 7, 8

## I. INTRODUCTION

Plaintiff devotes his Opposition to Lennar's Motion for Summary Judgment to reciting immaterial and irrelevant facts or mischaracterizations of deposition testimony. He ignores his burden under relevant case law and fails to present admissible evidence to establish any triable issue of fact. The material facts remain undisputed, and Lennar is therefore entitled to summary judgment as a matter of law.

## II. PLAINTIFF'S AGE AND DISABILITY DISCRIMINATION CLAIMS FAIL.

### A. **Plaintiff Cannot Establish a *Prima Facie* Case for Disability Discrimination.**

Plaintiff has failed to meet his burden to designate specific facts showing there is a genuine issue of material fact as to his disability discrimination claim. In the face of undisputed evidence that (1) he is unable to establish a *prima facie* case because he cannot prove that he was subjected to any adverse employment action because of his disability or a causal connection between any disability and his eventual termination and (2) his employment was terminated for legitimate, nondiscriminatory reasons, Plaintiff sets forth no opposing evidence – a fact readily ascertainable by scanning his brief, which is notably devoid of fact citations or case law authority.

Plaintiff does not dispute that he verbally assaulted and threatened physical violence against a fellow Lennar colleague. Garraffo Decl. ¶ 7, Ex. C. Further, Plaintiff admits that he "lost a little bit of control" and said some things that were "pretty bad." Pusateri Decl., Ex. A [Pl. Dep. 273:8-15, 279:2-21]. Claiming that his abusive conduct was caused by a medication error, Plaintiff's opposition is based solely on his contention that he was "ostracized by his superiors" after the altercation and his displeasure at "being forced to apologize" for his inappropriate actions. Pl. Opp. p. 15:16-17. The alleged ostracization, however, is based on nothing more than Plaintiff's pure speculation that "You could just tell it [the way his supervisors treated him] had changed from that [altercation] incident until I was laid off." Pusateri Dec., Ex. A [Pl. Dep. 287:10-20]. Plaintiff's self-serving subjective belief is not enough to satisfy his burden under the law – particularly when Lennar has articulated a nondiscriminatory reason for his discharge. *See, e.g., Grizzle v. Travelers Health Network, Inc.*, 14 F.3d 261, 268 (5th Cir.1994) (employee's "self-serving generalized testimony stating her subjective belief that discrimination occurred ... is

1
**LENNAR'S REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

simply insufficient to support a jury verdict in plaintiff's favor"). And, Plaintiff cites no authority supporting his lament that being "forced to apologize" for his abusive conduct, which clearly violated Lennar's policies against harassment and workplace violence, constituted an adverse employment action.

Plaintiff offers no evidence to create a triable issue that Lennar terminated his employment because of his alleged disability. Plaintiff admits that no one at Lennar ever told him he was laid off because of his medical condition. Pusateri Decl., Ex. A [Pl. Dep., 288:2-5; 290:5-292:14]. Unlike the facts of *Sandell v. Taylor-Listug*, 188 Cal.App.4th 297 (2010) cited in Plaintiff's opposition, Plaintiff does not allege – nor can he – that anyone at Lennar threatened to fire Plaintiff if he did not make a full recovery or made any disparaging comments about his alleged disability or engaged in any other conduct that would indicate Lennar considered his alleged disability when it decided to terminate his employment *eight months* after the altercation. Because Plaintiff has no direct or inferential proof that a disability-based discriminatory bias was a motivating factor in the decision to terminate Plaintiff, Lennar is entitled to summary judgment on Plaintiff's disability discrimination claim.

### B.  Plaintiff Cannot Establish a *Prima Facie* Case for Age Discrimination.

Plaintiff's opposition repeatedly distorts the facts in an effort to evade summary judgment. To name just one example, Plaintiff contends that he was replaced by Jaime Hernandez but he has no evidence to support this statement. Porter, Farley and Hernandez each testified that Mark Porter, not Jaime Hernandez, took over Plaintiff's position as the Area Manager for Sky Ranch. Pusateri Decl., Ex. I [Porter Dep. 31:14-16]; Ex. J [Farley Dep. 36:17-19], Ex. K [Hernandez Dep. 26:1-4]; Pusateri Reply Dec., Ex. M [Porter Dep., 96:2-4].[1]

---

[1] To the extent that Hernandez, as the Assistant Area Manager at Sky Ranch, was performing some Area Manager related duties, Plaintiff does not dispute that the Sky Ranch project was 80% complete and it was not uncommon for an Assistant Area Manager to "take over" responsibility for completing the community once the project was "far enough along." Pusateri Reply Decl., Ex. L [Pl. Dep. 178:16-25, 180:2-6]. In fact, Plaintiff admits that this is precisely what happened at his prior community, Eureka Ranch, when the Assistant Area Manager Rob Knapp "took over" after Plaintiff left the community when major aspects of the horizontal construction were completed. *Id.* Porter similarly testified that it was "pretty typical to have an assistant area manager finish up as the area manager would go out to start the heavy construction on a new community." Pusateri Reply Decl., Ex. M [Porter Dep. 48:23-49:1].

2
**LENNAR'S REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

Plaintiff also attempts to mischaracterize Mike Farley's deposition testimony by asserting that Farley was a decisionmaker with respect to Plaintiff's layoff. However, the transcript makes clear that Farley was simply notified *after the decision was made* as to who would be terminated as part of the reduction in force. Farley testified: "I was most likely informed by HR subsequent to conversations with Mike Levesque regarding the topic [of layoff]. So I'm not privy to any conversations with Mike Levesque or any other team management would have had in Human Resources in making final determinations as to who was being laid off." Pusateri Decl., Ex. J [Farley Dep. 34:21 – 35:1].

The California Supreme Court in *Reid* concluded that the plaintiff there had presented sufficient evidence of pretext to defeat summary judgment where, in addition to multiple ageist remarks, there was evidence of e-mails relating to age and terminating plaintiff, comments that plaintiff was not a "cultural fit", statistical evidence of age discrimination, plaintiff's demotion, and changed rationales for plaintiff's termination. *Reid v. Google, Inc.*, 50 Cal. 4th 512, 545 (2010). By contrast, none of those additional factors are present here. Indeed, Plaintiff does not even come close to the evidentiary showing made in *Reid*. Plaintiff's age discrimination claim rests entirely upon a single remark allegedly made by a non-decisionmaker (Farley), who was also subsequently laid off at the age of 33 by Lennar within four months of Plaintiff's termination. Pl.'s PNOL, Ex. 8, 6:19-20, Pusateri Reply Decl., Ex. O [Farley Dep. 6:3-9.] This is insufficient to defeat summary judgment. A "stray remark alone may not create a triable issue of age discrimination." *Reid,* 50 Cal. 4th at 541-542.

**C.     Plaintiff Has No Evidence of Pretext or Discriminatory Animus.**

Save for a single stray remark, Plaintiff has no evidence that Lennar's decision to terminate him was pretextual or based upon any intent to discriminate against him on the basis of disability or age. To avoid summary judgment, Plaintiff cannot rely on speculation and must offer substantial evidence that the employer's stated non-discriminatory reason for the adverse action was untrue. *Hersant v. Dep't of Soc. Servs.*, 57 Cal. App. 4th 997, 1005 (1997). Here, Plaintiff does not dispute that he was terminated as (1) part of a series of layoffs in a RIF; (2) the Sky Ranch development was 80% complete; (3) there were no future Lennar development

3

**LENNAR'S REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

projects to assign Plaintiff to; and (4) the San Diego Division was ultimately closed within months after Plaintiff was laid off. Plaintiff merely concludes, without any supporting evidence, that Lennar's reasons were false. As Plaintiff cannot establish that Lennar's reasons for terminating his employment were pretextual, Plaintiff's disability and age discrimination claims fail as a matter of law.

### III. PLAINTIFF'S BREACH OF CONTRACT CLAIM FAILS

#### A. **Plaintiff Cannot Prove a Contractual Entitlement to a Performance Bonus**

##### 1. The Written 2007 TBO Plan Superseded Plaintiff's Prior Alleged Bonus Oral Agreement.

California law presumes a written contract supersedes all prior or contemporaneous oral agreements. Cal. Civ. Code §1625. It is undisputed that Plaintiff signed the written 2007 TBO which governed Plaintiff's potential bonus award for fiscal year 2007 – the only year for which Plaintiff seeks a bonus in this case. Plaintiff cannot rely on an alleged oral agreement made in 2005 to pay him a 25% bonus to support his claim for a FY2007 bonus because "[t]here cannot be a valid express contract and an implied contract, each embracing the same subject, but requiring different results because the express term is controlling even if it is not contained in an integrated employment contract." *Metoyer v. Chasman*, 504 F.3d 919, 936-37 (9th Cir. 2007).

Plaintiff's arguments to the contrary do not create a triable issue of fact. Plaintiff argues that he was not paid a bonus pursuant to the TBO documents, but he fails to present any evidence to create a dispute of fact, which is not surprising since the documents indisputably show that Plaintiff was never paid a 25% incentive bonus, and that Plaintiff's bonuses for FY2005 and FY2006 were paid pursuant to the terms of the TBO documents. Pusateri Decl., Ex. A [Pl. Dep. 246:23-247:6] & Exs. C, D, E; Garraffo Decl., ¶¶5, 6 & Exs. A, B. Plaintiff also argues that Lennar is estopped from relying on Plaintiff's offer letter to disprove his contract claim, but this argument is a non-starter. The 2007 TBO, not Plaintiff's June 15, 2005 offer letter, governed the terms of Plaintiff's eligibility for a bonus for FY2007. Furthermore, Plaintiff's argument that Lennar's reliance on the TBO documents somehow constitutes a violation of Labor Code §§ 206 and 216 makes no sense. Labor Code §206 relates to payment of wages concededly due in a

4

**LENNAR'S REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

wage dispute and wage awards in claims before the Labor Commissioner and has no bearing on this case. Labor Code §216 makes it a misdemeanor for an employer to willfully refuse to pay wages due or to falsely deny that wages are due with the intent to secure a "discount upon such indebtedness[.]" Labor Code § 216 does not apply where, as here, an employer disputes in good faith an employee's claim for wages. *In re Trombley*, 31 Cal. 2d 801, 808 (1948).

Plaintiff's waiver argument also falls flat. Plaintiff's effort to recast the 2007 TBO as a release agreement defies logic and common sense. The 2007 TBO sets forth the terms of the bonus program applicable to Plaintiff for FY2007; the document cannot be construed as an unlawful waiver of agreed compensation by any stretch of the imagination. Additionally, contrary to his assertions, Plaintiff has *not* submitted evidence that other employees were given bonuses for FY2007 under the 2007 TBO, nor has he submitted evidence to refute Lennar's decision not to pay Plaintiff a bonus for FY07. Plaintiff has not established that Farley and Hernandez were subject to the same bonus program as Plaintiff. Indeed, Plaintiff has not submitted any evidence concerning the nature of the bonus programs that other employees may have been eligible for in FY07. Thus, whether or not other employees received a bonus in FY07 is immaterial to the issue of whether Plaintiff is entitled to a bonus for FY07.

Under the plain terms of the 2007 TBO, which is the only bonus program that applied to Plaintiff, Lennar had absolute discretion to either pay or not pay Plaintiff a bonus for FY07. Pusateri Decl., Ex. F ("Performance <u>bonuses are discretionary</u>" and "<u>not intended to be a guarantee</u> of payout"; "<u>bonuses are not automatic</u>" and "the Company may <u>reduce any bonus amount at its sole discretion under any circumstances</u>," emphasis added].) Plaintiff's claim for a 2007 bonus therefore fails.[2]

### 2. Plaintiff Cannot Prove That He Reasonably Believed that Porter Had the Authority to Make a Binding Oral Contract Concerning Any Alleged Specific Bonus Amount.

---

[2] It is also worth noting that Plaintiff has submitted no evidence to support his claim that he "earned" a bonus for FY2007 even under the terms of the Alleged Bonus Oral Agreement. He concedes that his bonus under the Alleged Bonus Oral Agreement was contingent upon Plaintiff completing his projects on time, on budget, and with good quality. Pusateri Decl., Ex. A [Pl. Dep. 37:17-38:3; 67:25-68:11]. Plaintiff has proffered no evidence of completion of these stated goals to Lennar's satisfaction.

1     Plaintiff's opposition fails to create a triable issue of fact as to Porter's lack of authority to
2 make a binding contract concerning Plaintiff's bonus compensation. Plaintiff misstates Lennar's
3 position. Lennar does not allege that Porter had final authority to hire Plaintiff or set the terms of
4 Plaintiff's compensation. Significantly, Plaintiff himself admits that Porter did not have final
5 authority to set Plaintiff's compensation and that the decision had to be made by the division
6 president. Pusateri Dec., Ex. A [Pl. Dep., 68:16-23; 69:19-21; 248:22-249:14]. Moreover,
7 Plaintiff does not and cannot dispute Porter's testimony that Porter lacked final authority to hire
8 Plaintiff or set his compensation. Pusateri Dec., Ex. I [Porter Dep., 80:15-22]; Pusateri Reply
9 Dec., Ex. M [Porter Dep.53:7-13; 54:4-58:23].

10     As explained in Lennar's moving papers, Plaintiff cannot show that Porter had actual or
11 ostensible authority to bind Lennar to a contract for a bonus. Doc. 46-1 at 21:10-25:23. In
12 opposition, Plaintiff asserts in a conclusory fashion that Lennar intentionally or negligently led
13 Plaintiff to believe that Porter had authority to bind the corporation, but he fails to cite to any
14 record evidence other than the mere fact that Porter interviewed Plaintiff for the job, which is
15 insufficient to establish that Porter was vested with final authority to set the terms of Plaintiff's
16 compensation, particularly in light of the fact that Plaintiff himself concedes that Porter lacked
17 final authority to set his compensation. Nor does it establish that Lennar intentionally or
18 negligently sought to lead Plaintiff to reasonably believe that Porter had authority to make a
19 binding contract with Plaintiff for a bonus, and Plaintiff cites no authority to the contrary.
20 Ostensible authority can only arise from the acts of Lennar; it could not have been based on the
21 acts of Porter in interviewing Plaintiff. *South Sacramento Drayage Co. v. Campbell Soup Co.*,
22 220 Cal. App. 2d 851, 857 (1963).

23     **B.     Plaintiff's Claim for Unpaid Overtime Fails**

24     Plaintiff asserts that he was not an exempt employee because (1) he worked overtime
25 hours, (2) he filled out time cards, (3) he was a production employee, and (4) he did not exercise
26 judgment and discretion. Plaintiff's first and second assertions are immaterial to the exemption
27 analysis, and the third and fourth assertions are unsupported by the record and simply wrong as a
28 matter of fact and law.

1         First, whether or not Plaintiff worked overtime hours is irrelevant. The administrative
2   exemption analysis does not take into account hours worked. 29 C.F.R. §541.200; IWC Wage
3   Order 16-2001, at ¶1(A).
4         Second, the fact that Plaintiff may have filled out time cards for part of his employment is
5   of no consequence to the exemption analysis. Federal courts have held that the use of time cards
6   does not affect an individual's status as an exempt employee. In *Douglas v. Argo-Tech Corp.*,
7   113 F.3d 67 (6th Cir. 1997), for example, the plaintiff argued that he was not a salaried employee
8   because the employer requested that he continue using the company time clock. The court
9   rejected this argument as "overly simplistic" and concluded that the "fact that an employee uses a
10  time clock, standing alone, does not preclude application of the administrative employee
11  exemption." *Id*. at 71. See also *Kuchinskas v. Broward County*, 840 F.Supp. 1548, 1556 (S.D.
12  Fla. 1993)(finding that requiring exempt employees to keep time sheets did not negate plaintiffs'
13  status as salary based employees). Here, Plaintiff does not dispute that he was paid his full salary
14  for each workweek in which he performed any work, and there is no evidence that Plaintiff's
15  compensation was calculated on the basis of the hours reported on his time card. It is undisputed
16  that the Company's policy is to pay exempt salaried employees their full pay regardless of the
17  number of hours worked in a day. Pusateri Reply Dec., Ex. N [Garraffo Dep., 44:10-25].
18        Third, Plaintiff's reliance on the so-called "administrative/production dichotomy" is
19  misplaced. Significantly, California courts hold that the dichotomy should be applied with "great
20  caution" because its "gross distinction between administrative employees and production
21  employees may not be dispositive in many cases." *Combs v. Skyriver Communications, Inc*., 159
22  Cal. App. 4th 1242, 1258 (2008). The administrative/production dichotomy is "but one analytical
23  tool, to be used only to the extent it clarifies the analysis." *Bothell v. Phase Metrics, Inc*., 299
24  F.3d 1120, 1127 (9th Cir. 2002). The dichotomy cannot properly be applied in many instances
25  because some employees perform specialized functions that cannot be readily categorized in
26  terms of the dichotomy and other employees "perform jobs involving wide variations in
27  responsibility that may call for finer distinctions than the administrative/production worker
28  dichotomy provides." *Combs*, 159 Cal.App.4th at 1260. Thus, the dichotomy is applicable *only*

where a plaintiff's activity "falls squarely on the 'production' side of the line[.]" *Bothell*, 299 F.3d at 1127; *Perine v. ABF Freight Sys., Inc.*, 457 F.Supp.2d 1004, 1014 (C.D. Cal. 2006).

Here, the facts and law simply do not support Plaintiff's contention that he was a production-level employee. Plaintiff's work managing the horizontal construction activities of Sky Ranch, a multi-million dollar 350-home project, was neither routine nor unimportant, and cannot be characterized as falling "squarely" on the production side of the line. Plaintiff argues, without citation to any authority, that because his office was located in a trailer at the construction site instead of in an office building, that fact alone somehow transformed him into a "field" production employee. Not so. The location of Plaintiff's office is irrelevant to the analysis.

Wage Order 16-2001 expressly incorporates 29 C.F.R. §541.205 (2001), which explains the phrase "directly related to management policies or general business operations" and provides, in relevant part, that the phrase "also includes a wide variety of persons who either carry out major assignments in conducting the operations of the business, or whose work affects business operations to a substantial degree, even though their assignments are tasks related to the operation of a particular segment of the business." 29 C.F.R. §541.205(c). Here, there is no question that the Sky Ranch project for which Plaintiff served as the Area Manager constituted a major assignment of substantial importance to Lennar's business operations. And, Plaintiff's own sworn testimony establishes that he spent the majority of his working time problem-solving very complicated issues (including devising several ideas to promote efficiency that saved Lennar millions of dollars), supervising subcontractors and managing the flow of work to determine the order and priority of the horizontal construction activities and maximize efficiency and cost savings to the Company, scrutinizing the scope of work of subcontractors' contracts with Lennar, evaluating and approving change orders, interacting with city officials, leading weekly on-site meetings and participating in the San Diego division's weekly active projects meeting. *See* Doc. 46-1 at 27:15-30:18. None of these specialized activities involved routine or unimportant manual or production work.[3]

---

[3] The subcontractors performed all of the manual labor at the worksite; Plaintiff did not participate in these activities. Pusateri Reply Dec., Ex. L [Pl. Dep., 151:14-25; 157:18-158:2]

8

**LENNAR'S REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

1    Presented with facts similar to the instant case, courts have rejected the rigid application
2    of the administrative/production dichotomy advanced by Plaintiff here and found plaintiffs to be
3    exempt administrative employees.  In *Combs*, for example, the court declined to apply the
4    dichotomy because the record showed that the plaintiff did not perform routine and unimportant
5    duties.  *Combs*, 159 Cal. App. 4th at 1261.  Similarly, in *United Parcel Service Wage & Hour*
6    *Cases,* the court rejected the plaintiff's "narrow and rigid application" of the dichotomy and
7    concluded that plaintiff was an administrative, not a production, employee because he was not
8    regularly engaged in the loading, unloading, sorting and delivery of packages but instead spent
9    his working time on duties such as implementing UPS action plans to promote efficiency so his
10   units smoothly interfaced with other UPS unit and supervising his employees to promote
11   workplace safety and timely package delivery.  *United Parcel Service Wage & Hour Cases,* 190
12   Cal. App. 4th 1001, 1029-1030 (2010)(hereinafter, "*UPS*").  *See also Cowart v. Ingalls*
13   *Shipbuilding, Inc.*, 213 F.3d 261, 263, 267 (5th Cir. 2000)(holding Senior Production Planners
14   who worked on new ship construction projects to be administratively exempt because they
15   evaluated work scope requirements, established priorities for assigned work, provided guidance
16   so that work schedules can be met, planned the sequence of new construction work to be
17   performed by the Pipe Department and scheduled the availability of materials needed to
18   accomplish that work).
19   Finally, Plaintiff argues, without citation to the record, that he did not exercise
20   independent judgment and discretion because he followed instructions from his superiors and he
21   was provided with a budget and schedule that he had to follow.  Plaintiff's assertions that he
22   merely followed instructions from the project manager, operations manager, and division vice
23   presidents and president are not supported by the record.  To the contrary, Plaintiff testified that
24   the operations manager, Mark Porter, had no involvement in the oversight of the Sky Ranch
25   project (Pusateri Reply Dec., Ex. L [Pl. Dep., 197:14-22]).  Plaintiff further testified that he had
26   "very little" interaction with the division president Pete Fagrell (*Id*. [Pl. Dep., 149:19-25]) and
27   rarely communicated with the subsequent division president Mike Levesque (*Id*. [Pl. Dep., 230:7-
28   234:3]).  In any event, the mere fact that an employee "reported to a higher level manager…does

1  not mean he did not exercise the requisite discretion." *UPS*, 190 Cal. App. 4th at 1027.  Nothing
2  in the Wage Order indicates the exemption applies to only the most senior management, and the
3  federal regulations instruct that an exempt employee need not be the final decisionmaker.  *Id*.
4  (citing 29 C.F.R. §541.207(e)).

5      Moreover, the mere fact that Plaintiff may have been provided with a schedule and budget
6  does not eliminate judgment and discretion.  As noted by the court in *UPS*, "merely because an
7  employer requires adherence to regulations, guidelines or procedures does not mean an executive
8  does not exercise discretion or judgment.  The modern workplace is a regulated workplace often
9  overlayed by internal policies and procedures.  We cannot interpret [Wage Orders] in a vacuum,
10 ignoring this reality." *UPS,* 190 Cal. App. 4th at 1026.  Here, Plaintiff has no evidence showing
11 that he was somehow limited to one course of action in his decisionmaking.  Indeed, Plaintiff
12 admitted that unforeseen issues would impact the construction schedule, and that he would make
13 recommendations to assist with formulating a plan to go forward to minimize the scheduling
14 delays and costs.  Pusateri Reply Dec., Ex. L [Pl. Dep., 97:2-102:14].  Given the nature of the
15 work that Plaintiff admitted he regularly performed, it belies logic and common sense to equate
16 those duties with rote, mechanical work lacking the requisite degree of discretion.

17     In short, Plaintiff's effort to minimize his admissions by stating in his opposition brief the
18 mere conclusions that he was only a blue collar worker is insufficient to raise a triable issue on
19 this claim.  Plaintiff fails to rebut Lennar's evidence – consisting of Plaintiff's own sworn
20 testimony – showing that he spent the majority of his working time performing exempt work of
21 substantial importance to Lennar.  Plaintiff's overtime claim fails.

22     In summary, for the foregoing reasons and the reasons explained in Lennar's moving
23 papers, Lennar is entitled to summary judgment on all of Plaintiff's claims.

Dated: January 24, 2011                    MEYER WHITE LLP


By: /s/Cindi L. Pusateri
    Cindi L. Pusateri
    Hien Nguyen

Attorneys for Defendant
LENNAR CORPORATION

**LENNAR'S REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**